UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SANDRA HARRISON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:05-cv-864-RLY-TAB |
| | ) | |
| LARUE D. CARTER MEMORIAL HOSPITAL, | ) ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Larue D. Carter Memorial Hospital ("the Hospital"), is operated by the Indiana Family and Social Service Administration's Division of Mental Health and Addiction. Plaintiff, Sandra Harrison, is a long-time employee of the Hospital. Plaintiff has filed suit against the Hospital alleging that she has been discriminated against on the basis of sex and retaliated against for engaging in activity protected by Title VII of the Civil Rights Act of 1964. Specifically, Plaintiff claims she has been denied promotions in 2003 and 2004 and subjected to a hostile work environment.

On August 8, 2006, the Hospital filed a motion for summary judgment. In Plaintiff's Response, she conceded that she cannot prevail on her claim for sex discrimination, her claim for retaliation as it relates to the alleged denial of a promotion in 2003, and her claim of a hostile work environment. Therefore, this entry will only address Plaintiff's claim for retaliation as it relates to the alleged denial of a promotion in

1

2004.

The court, having read and reviewed the parties' supporting and opposing briefs, the designated evidence, and the applicable law, now **GRANTS** the Hospital's motion.

## I.   Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *See Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003). The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at

322)).

## II. Facts

### A. Background

1. Plaintiff was hired by the Hospital in 1972. (Deposition of Sandra Harrison ("Plaintiff Dep.") at 6).

2. Plaintiff earned a Bachelor of Science in Therapeutic Recreation in 1971 and obtained a Masters Degree in Therapeutic Recreation in 1976. (Plaintiff Dep. at 5).

3. Plaintiff holds the position of Rehabilitation Therapist 4 ("RT4"). (Plaintiff Dep. at 6).

4. The Hospital is organized into "service lines," including the Adult Service Line and Youth Service Line. Plaintiff works in the Adult Service Line. (Plaintiff Dep. at 7).

5. In approximately 1987 or 1988, John Mitchell was program director of the Hospital. (Deposition of John Mitchell ("Mitchell Dep.") at 18).

6. Mitchell considered Plaintiff to be a close friend. (Mitchell Dep. at 18).

7. Mitchell testified that at that time, he was very upset with Plaintiff for failing to inform him that a mutual friend had passed away. (Mitchell Dep. at 18-20, 88).

### B. Plaintiff's employment complaints and lawsuit

8. Also around this time period, Mitchell was relieved of his duties as program director due to an allegation that he "was angry or elevated [his] voice toward . . .

        a couple of female staff," one of whom was Plaintiff.  Mitchell also testified that there may have been other reasons for the change in duties, stating, "I don't know if it was primarily because of that or because of the way in which they reorganized the hospital."  (Mitchell Dep. at 18-20).

9. In August of 1990, Plaintiff wrote a memorandum to Rymantas Guzulaitis, Director of the Rehabilitation Department, complaining about the treatment she received from Mitchell.   She stated that he was "abrasive, hostile, angry and intimidating in nature."  She also complained that he discussed "her breasts and threatened [her] that if [she] didn't wear the clothing he suggested that [she] would be written up."  She requested that Mitchell be removed as her supervisor. (Affidavit of Sandra Harrison ("Plaintiff Aff."), Ex. A).

10. In 1993, Plaintiff filed a federal lawsuit complaining that she was denied a promotion to RT3 because of her gender.  Plaintiff lost at the district court level, and appealed the decision to the Seventh Circuit Court of Appeals.

11. Mitchell was not involved in the Hospital's decision to award the RT3 position to another individual.  (Defendant's Exs. B and C.).

       **C.**     **Plaintiff's PSR certification and Clampitt's challenge to the same**

12. In 1999, Plaintiff became an instructor in psychosocial rehabilitation ("PSR") therapy and is a Certified Therapeutic Recreation Specialist ("CTRS").  (Plaintiff Dep. at 24).

13. In 2004, John Clampitt, a RT3, requested to Mitchell, the Adult Service Line

      Manager, that Plaintiff no longer be a PSR instructor given Clampitt's concerns regarding Plaintiff's performance. (Plaintiff Dep. at 25-26; Deposition of John Clampitt ("Clampitt Dep.") at 44-45).

14. On March 9, 2004, Plaintiff and Paula Luzader[1] wrote an e-mail to Mitchell, among others, stating that the requirement to attend a meeting with Mitchell and Clampitt to discuss their performance as PSR instructors constituted "ongoing harassment, intimidation, age and gender discrimination, and retaliation." (Plaintiff's Ex. F).

15. Following a hearing held on March 17, 2004, Mitchell concluded that Plaintiff should remain a PSR instructor. (Plaintiff Dep. at 26-28).

    **D.    An opening for the RT3 position**

16. On August 2, 2004, the position of RT3 in the Adult Service Line opened. (Defendant's Ex. F).

17. On August 19, 2004, Mitchell notified Plaintiff of the opening by letter. The letter stated that the individual selected "will provide a variety of recreational, leisure and psychosocial rehabilitation for the adult patients at [the Hospital]." It also stated that the position would include some supervisory responsibilities. (Plaintiff Aff. Ex. B).

18. Plaintiff filled out an application for the same. (Plaintiff Dep. at 46-47).

---

[1] The record is not clear, but it appears that Clampitt also complained about Luzader's performance as a PSR instructor.

19. Barbara Romerhaus, a Board Certified Music Therapist, applied for the position on July 13, 2004, upon the request of Mitchell. (Hospital Dep. Ex. 11; Defendant's Ex. F; Mitchell Dep. at 85-86 and Dep. Ex. 27).

20. Romerhaus' application indicates she had previously worked at State facilities for over thirty (30) years and had held the position of RT2 before a brief retirement. (Defendant's Ex. H).

21. Romerhaus does not have a Masters Degree, is not trained in PSR, and is not a CTRS. (Hospital Dep. Ex. 11).

### E.  Plaintiff interviews for the RT3 position and files an EEOC charge

22. Plaintiff, Romerhaus, and three other women were interviewed for the 2004 RT3 position. (Plaintiff Dep. at 47; Defendant's Ex. F).

23. An interview panel selected Plaintiff and Romerhaus for second interviews. (Plaintiff Dep. at 47; Mitchell Dep. at 61-62).

24. Mitchell, Clampitt, and Susan Godsey conducted the second interviews soon thereafter. (Plaintiff Dep. at 47; Mitchell Dep. at 62).

25. On September 14, 2004, Plaintiff filed a charge of discrimination with the EEOC with regard to the March 17, 2004 hearing, alleging retaliation, harassment, gender discrimination, and age discrimination. (Plaintiff Dep. at 47-48 and Dep. Ex. D).

### F.  Plaintiff is not selected for the RT3 position

26. On September 16, 2004, Mitchell selected Romerhaus for the RT3 position. (Plaintiff Dep. at 49; Mitchell Dep. at 85-86 and Dep. Ex. 27).

27. Mitchell did not contact all of the references that Plaintiff listed in support of her application. (Mitchell Dep. at 68).

28. Mitchell explained the reasons for selecting Romerhaus for the position to Human Resources Director Justin Heit as follows: "This is based on her overall years of experience, qualifications, credentials, and both interviews. It was felt she meets the needs of the position and the patients she will serve. As a Board Certified Music Therapist, she brings a new dimension to the treatment program the hospital has not had in a while." (Defendant's Exs. F and G; Mitchell Dep. at 85-86 and Dep. Ex. 27).

## III.  Discussion

A plaintiff may prove her retaliation claim by using either the "direct method" or "indirect method." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir. 1998). Under the "direct" method of proof, "the plaintiff may show (either through direct evidence or circumstantial evidence) that the employer's decision to take the adverse job action was motivated by an impermissible purpose (race, sex, religious animosity, etc.)"; *Sattar v. Motorolla, Inc.*, 138 F.3d 1164, 1169 (7th Cir. 1998); *see also Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Under the "indirect" method of proof, a plaintiff may introduce evidence in his or her prima facie case to give rise to the presumption of discrimination. *Sattar*, 138 F.3d at 1169 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973)). *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991). In

this case, Plaintiff chooses to proceed under the "direct" and "indirect" methods.

### A.     Direct Method

There are two types of evidence under the direct method: direct evidence and circumstantial evidence. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Direct evidence "'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Id*. (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Such evidence is rarely found. *Venturelli v. ARC Community Services, Inc*., 350 F.3d 592, 599 (7th Cir. 2003). Circumstantial evidence is evidence that "'allows a jury to infer intentional discrimination by the decision-maker.'" *Id*.; *Troupe*, 20 F.3d at 736-37; *see also Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998).

A prima facie case of retaliatory discharge under Title VII using the direct method requires a plaintiff to show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005); *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 638-40 (7th Cir. 2001).

The Hospital contends that Plaintiff is unable to establish the third element of her prima facie case. "The key inquiry in determining whether there is a causal connection under the direct method is whether [the decision-maker] was aware of the allegations of discrimination at the time of h[is] decision[ ] [not to promote the plaintiff]; absent such knowledge, there can be no causal link between the two." *Luckie v. Ameritech Corp*., 389

F.3d 708, 715 (7th Cir. 2004). Here, Plaintiff has failed to produce evidence showing that Mitchell was aware of her EEOC charge of discrimination filed on September 14, 2004.

In apparent recognition of this fact, Plaintiff cites to other instances in which she engaged in protected activity – i.e., the 1990 complaint in which she asked that Mitchell be removed as her supervisor, the 1993 federal lawsuit alleging gender discrimination with regard to a denial of a promotion, and the March 2004 e-mail in which she and Luzader stated that attending a meeting regarding their PSR certification with Mitchell and Clampitt constituted "ongoing harassment, intimidation, age and gender discrimination, and retaliation." (Plaintiff's Ex. F).

To the extent the 1990 complaint could be termed "protected activity," it is simply too remote in time to establish a causal connection. The same is true for the 1993 federal lawsuit and the March 2004 e-mail. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (26-day gap between complaint of national origin discrimination and discharge insufficient to establish causal connection); *see also Parnell v. Hometown Distributing Co., Inc*., 2006 WL 314518, *8 (N.D. Ill. Feb. 7, 2006 (finding 29-day gap insufficient, but finding 3-day gap sufficiently close to merit suspect timing inference so long as additional evidence of a causal connection exists). *See also Davidson v. Midelfort Clinic*, 133 F.3d 499 (7th Cir. 1998) (noting that as the time between the protected activity and adverse action increases, the suspicion of causation weakens). Moreover, the 1993 federal lawsuit did not involve Mitchell. The March 2004 e-mail does not appear to have affected Mitchell's judgment, as it was Mitchell who determined that Plaintiff would

9

maintain her PSR certification. For these reasons, the court finds Plaintiff's retaliation claim under the direct method fails as a matter of law.

### B.     Indirect Method

To establish a prima facie case of retaliation under the indirect method, Plaintiff must show that "(1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

The Hospital contends that Plaintiff is unable to establish the fourth element of her prima facie case. In Plaintiff's Response, she attempts to compare herself to Romerhaus. However, she fails to show, with admissible evidence, that Romerhaus did not engage in protected activity. Even assuming Plaintiff had produced such evidence, Plaintiff is unable to establish that the Hospital's reason for selecting Romerhaus over Plaintiff – i.e., her experience, qualifications, credentials, her certification in music therapy – was a pretext for discrimination.

Pretext is "a dishonest explanation, a lie rather than an oddity or an error." *Kulmani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). Even if an employer's reasons were "mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205

F.3d 337, 343 (7th Cir. 2000).

Plaintiff attacks Mitchell's decision to hire Romerhaus on grounds that music therapy has never been a requirement for the position and that Romerhaus does not have a master's degree.  The fact that individuals selected for RT3 positions in the past were not music therapists or that the job description or job announcement did not require music therapy does not prove pretext.  The Hospital was free to decide that, while not a requirement for the position, it would be beneficial to select someone who could bring this new aspect to the services it provides its patients.  Moreover, Romerhaus was highly qualified for the position, having previously worked for the State for approximately thirty (30) years.  In fact, Romerhaus had held a RT2 position, a position higher than the RT3 position she and Plaintiff were vying for.  Finally, the fact that Plaintiff believes she was more qualified than Romerhaus does not establish pretext.  "The pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 727 (7th Cir. 2005).  Thus, even if Plaintiff were more qualified than Romerhaus, "that fact would not show pretext so long as [the Hospital] *believed* [Romerhaus] to have the superior qualifications." *Id*. (emphasis in original).  There is no evidence that the Hospital did not believe that Romerhaus was the superior candidate.  Accordingly, Plaintiff's indirect case fails as a matter of law.

### IV. Conclusion

For the reasons stated above, the court **GRANTS** Defendant's Motion for Summary Judgment (Docket # 41).

**SO ORDERED** this   8th   day of January 2007.

                                                              _____
                                                              RICHARD L. YOUNG, JUDGE
                                                              United States District Court
                                                              Southern District of Indiana

Electronic Copies to:

Andrew Dutkanych III
BIESECKER & DUTKANYCH LLC
ad@bdlegal.com

Kathryn Lynn Morgan
INDIANA STATE ATTORNEY GENERAL
Kathryn.Morgan@atg.in.gov

Juliana B. Pierce
INDIANA STATE ATTORNEY GENERAL
Julie.Pierce@atg.in.gov